Incorporated v. Staffing 360 Solutions, Incorporated v. Staffing 360 Solutions, Incorporated v. Staffing 360 Solutions, Incoporated v. Staffing 360 Solutions, Incorporated v. Staffing 360 Solutions, Incorporated v. Staffing 360 Solutions, Incorporated v. Staffing 360 Solutions, Incorporated v. Staffing 360 Solutions, Incorporated v. Staffing 360 Solutions, Incorporated v. Staffing 360 Solutions, Incorporated v. Staffing 360 Solutions, Incorporated. Under a liquidated damages clause that has nothing to do with the contractual provision the jury found was breached. I'd like to focus first on arguments that would either result in rendition of a judgment in my client's favor or a new trial. And if the court were to grant relief on either one of those bases, then it could avoid ruling on any issues of New York law, such as the penalty issue. First, we'd like to address to the court our position that there's no evidence to support the jury's answer to question number one, which is the breach of contract question. All the liability in this case, every penny of damages that were awarded in this $1.3 million judgment flow from this particular finding. And if the court were to rule in favor, as I suggested earlier, a reverse and remand or reverse and rendition, we think we've met the standards, recognizing that there's a potential preservation of error problem here. We think we've met the standards for reversal under plain error, which would, as the court knows, send it back for a new trial. Or secondly, we believe pretty strongly that we've met the standard for legal insufficiency of the evidence if error was preserved, resulting in rendition. So, new CSI frames the issue here as whether there was any evidence that the stock purchase agreement calls for payment based on the gross calculation of a deferred tax asset or deferred taxes, rather than a net calculation that also offsets the liabilities associated with those assets, potential liabilities. Counsel, obviously your argument is the gap says you do it a certain way. Parole evidence was allowed to explain what the parties meant, a lot of testimony as to why it was a gross number. Contrary evidence may have been introduced. Isn't this an interpretation of the contract and not an interpretation of balance sheets and jury found through instructions that this is what was meant? It is an interpretation of the contract, but it requires application of a technical term contained in the contract. Well, it's a technical term if you want to force it into normal accounting terminology, but I think the whole exercise for a trial, after the magistrate said this was ambiguous, if that's the word he used, I'm not sure exactly what word he used, but it couldn't be decided on summary judgment, is that we need to put this in front of a fact finder. And so it's not — maybe it's an accounting term and we've got to use precise accounting terminology or maybe it's a slightly different — that's what juries are supposed to figure out. God bless them. Well, and I'm glad you brought that up, Your Honor. The God bless them part or the — It's interesting because, yes, Magistrate Judge Austin did find that there was ambiguity, sufficient ambiguity in the terminology so as to warrant a trial in this case. However, by the time the case went to trial, neither party contended that there was any ambiguity in that terminology. Both sides, for whatever reason, decided that their interpretation was correct and that there actually was no ambiguity. So the jury wasn't asked to decide specifically that there was — you know, which version in terms of an ambiguity decision was correct. The jury was asked to apply terminology that our expert testified doesn't exist outside of tax accounting, and particularly under generally accepted accounting principles. So, that technical term, you know, even the charge recognized, Judge Southwick, that technical terminology had to be given its technical meaning and there were only very limited circumstances under which the jury in this case, as charged, could back away from that technical meaning. Those were surrounding circumstances and, you know, general usage of trade, I guess, would be a good way of describing it. So, that's exactly the angle that new CSI relies on in its brief, is it says, well, okay, assuming that what we say is correct, that it's really a technical term, and they actually concede that in their brief. It does use the word, yes, deferred taxes, deferred tax assets is a technical term. The jury was instructed to consider the context of the instrument or applicable usage in the surrounding circumstances. And so, in doing that, that's where the Pearl evidence comes in. That's where new CSI relies on the testimony of one of its shareholders who was working at CSI, the division that was purchased from new CSI as part of the stock purchase agreement. They relied on its shareholder, Mr. Cooper, Charles Cooper. He testified about the negotiations and his reasons for wanting Section 2.7 to pay based on gross numbers rather than net numbers. And we've pointed out to the Court, as you've already mentioned, Judge Southwick, that Pearl evidence, that is Pearl evidence. And we say it's Pearl evidence of the intent of the parties. And the rule in New York is that the Pearl evidence rule is a rule of law. And this Court has applied that very principle to conclude that Pearl evidence in this situation is immaterial. It's not, it cannot be given any weight whatsoever, even if there's no objection to it at trial. And that's exactly what our circumstances are here. That's the Croft Mullins case cited in our 28J letter filed a couple of days ago. Is it inappropriate? It's because it goes to the parties. Well, it's the basic, it's the basic formulation of the Pearl evidence rule, which is when you've got an integrated writing, as we have here, there's a merger clause, you can't rely on the party's testimony about what they intended or about the negotiations to construe the agreement. The agreement has to be construed, start first with the four corners. And didn't both sides offer some, at some point? Pearl evidence? Well, that, certainly New C.S.I. did, and that's the point of my argument here. The argument, actually, I would beg to differ with you on that point, Judge Elrod, because our evidence on the meaning of deferred taxes had to do with whether it was a technical accounting term and the application of that term. Again, our expert testified it doesn't exist outside of generally accepted accounting principles and the A.S. 740 formulation. But in answer to Judge Southwick's earlier question, you said that the parties each did not, they did not contend there was ambiguity. The court can still think that there's ambiguity and hear evidence on that, though. The court gets to decide. Even, there are many cases where each side says their interpretation wins, and then they try it on ambiguity, the facts that would come in an ambiguous case. Well, I suppose the court could decide that, but in this case, the court left it to the jury. But, I mean, they can do that. The court can say it's ambiguous and I'm going to try it on that, even if both sides say it's not. There are cases on that. I have no doubt about that. I have a question. This, perhaps, will show my accounting ignorance, but I'm going to ask the question anyway. How will testify that the gap requires calculating deferred taxes by netting deferred tax assets and deferred tax liabilities? Couldn't one infer from this that deferred tax assets could be pre-netting based upon that testimony? Well, I think it's a matter of applying the word deferred. He testified that a tax asset was something that is booked, and then at some point later, you've got the difference between book accounting, keeping the books and records of the corporation, versus tax deductions do you actually get to take. Okay? His testimony was you can't only look at the gross. You know, let's say we have an expense that we're going to charge off on our 2016 books. Yes, that might be a deduction, but we won't know the deduction and the extent of which there actually is a deduction until we do our taxes. And even then, we have to assess this on a more likely than not standard. There has to be, in order for it to be an actual benefit, you have to evaluate whether in over the longer view, over both phases of tax accounting, whether there's actually a benefit to the party taking the deduction. In that language, the benefit language is actually contained in Section 2.7 of the agreement, which the deferred, yes, it would have been helpful, and this goes again to Judge Southwick's point, it would have been helpful if the parties had explicitly defined what they meant by deferred tax asset. But what they do say, how they do define the really operative term, which is deferred tax benefit, is to include deferred tax assets, accrued, or benefits obtained by either the purchaser or CSI as it existed in the transaction. So even the agreement itself, Section 2.7 contemplates there has to be a benefit to the party taking the deduction. And so, and Howell also testified, you may recall, that's a two-step process. You've got to look at what the potential tax assets are, and are they going to benefit, do they stand a more probable than not chance of actually benefiting the company? Because the idea here is these have to be worth something. There has to be an actual value to these assets. If they're not worth something to the company, then they can't really be an asset. And you have to consider all those factors in arriving at that conclusion, whether there's an asset. Another sort of corollary point to this is, you know, we've heard, if you read Mr. Cooper's testimony, he says, well, this is what I meant because we knew we had carry-forwards, net operating losses, that we wanted to take advantage of. Well, Mr. Howell made clear that in order to do that, you've got to put it all together, and you actually not only have to look at net versus gross, it's a net number of all assets we're going to claim. And this is actually also contemplated in Section 2.7 because it does say that Staffing 360 was supposed to reasonably finalize the dollar value of deferred tax assets, period, not each deferred tax asset, and then give credit for each deferred tax asset. There has to be a net valuation of deferred tax assets that you can reasonably conclude on a more probable-than-not basis that's going to benefit the company here. Also, you may be about to turn to this, but you have a few minutes left. Could we hear about the penalty argument that you have? Yes, sir, we certainly may. And I also just real briefly would mention, you know, we've briefed the issue of Juror Note 3. We think we've done that pretty extensively. That's our other basis for asking the court to reverse and remand. And we actually think that that's a much stronger argument than it would seem at first blush. And we'll rely on our briefing to make that point unless I have any time at the end to address it. So the penalty issue, you know, admittedly, we have a preservation issue concerning that as well. We've cited to the court the Lee case, this Court's decision that says, well, even if you don't plead an affirmative defense, you can assert it if you raise it at a pragmatically sufficient time and that the opposing party isn't prejudiced by the raising of it. And so we certainly say it was raised at a pragmatically sufficient time. Well, the other side says you had to introduce evidence on this. You had to get in front of a fact finder, the proportionality point, whatever else. What do you say to, I mean, you've argued that no evidence was necessary. Why is that? Well, all the evidence that would be necessary is in the record. We have the separate But didn't that leave it to the district judge? And maybe that's the right place to decide it's disproportionate or otherwise to make fact findings, as opposed to the jury making those fact findings. Well, it's an interesting argument from the other side, because they're the defendant or excuse me, they're the plaintiff, we're the defendant. And yes, you could make the point that we should, if we were going to present this defense in the first instance, that we should go and get a jury finding on it. However, it's not limited to just proportionality. There are other elements of the penalty rule that, based on the record that's before the Court, allow the Court to actually rule in our favor on this. And if I can be reminded what that is, let's see. Oh, well, it's the damages. The main point I would say, I would bring in response to that, Judge Southwick, is the damages have to be readily ascertainable. And that's one basis. If the damages are, in fact, readily ascertainable, then necessarily under New York law, this is a penalty. It was readily ascertainable if the only breach was going to be this breach. But the way the adjustment or whatever the name of the clause was, was written, is that an array of breaches would have led to this particular penalty. That's right. And as far as I'm aware, there's not a New York case that says, how narrowly do you view the breach? But what I do know is that in this case, the only breach that the jury found, the jury rejected the other breaches, the other grounds for breach. I see my time is up, if I may finish. Please complete your answer. Thank you. If that's all right with Judge O'Rourke. That's okay. The jury in this case found one breach. The jury rejected other breaches. Had the jury found other breaches, we probably wouldn't be making this argument. But in this case, the only breach was Section 2.7, the failure to pay the deferred tax benefit. We've pointed out in our brief, and I'll just refer the Court back to that in the interest of brevity, all the reasons why there is no connection whatsoever between the deferred tax benefit and the earn-out payments. The liquidated damages clause was designed to secure the earn-outs. And there's no, I can't emphasize it enough, there's no connection whatsoever here between the deferred tax benefit and earn-outs. And so without any connection whatsoever, we've certainly made the point that not only were the damages readily ascertainable from the conclusion of the transaction, but with there being no connection to 2.7, the second way of proving the penalty in this case, Judge Southwick, is to show that the award is disproportionate to actual damages. Without that relationship, it's de facto, and as I say, as a matter of law, disproportionate. Okay. And so you talked about that it's not Rule 8 waiver because you presented it even if it's not pled, but why isn't it Rule 50 waiver? Rule 50 is designed to ensure preservation of evidentiary points. This is a legal question. And we cite cases in our reply brief to, as for reasons why, the legal questions, including questions involving the interpretation of a contract, aren't, it's not necessary to file a Rule 50A motion to preserve those. How does the district court know? How can the district court correct? How does this work as a practical matter? It comes back to, was the issue raised at a pragmatically sufficient time? This is not, our position is this didn't affect the evidence that was put on, certainly not by new CSI. But the district court can't correct it after the, you know, 50 allows you to, at certain or fix the, you know, can fix things. And there's, there was no opportunity for the court to even know that this was going on, since it's not pled and it's not, it's just sort of buried in there. There's no fact-finding. In our, our view is there was no fact-finding necessary. This is like statutory damages caps. Let's look at it as a parallel. Okay. Let's, particularly how about punitive damages caps under Texas law? The Texas courts, the Supreme Court has said you don't have to plead that as an affirmative defense. It's just the law. And as long, I think they've pretty much tracked this Court's rule on raising issues that are pragmatically sufficient time. As long as it's raised before judgment, it's just a matter of how big the judgment is. It's not a matter of whether there's going to be evidence presented in our case here to actually combat. There's no evidence that could have been presented to combat the law that's being applied here, is our view. Okay. Thank you. May it please the Court. I'd like to jump right in on the last issue that, that was being discussed, and that is the, the necessity of the penalty issue having been raised earlier through pleading and through a Rule 50 motion. And it is critical here. And, and I think it also is important to step back a little bit because the same analysis of why there is a, a significant preservation, a fatal preservation issue, the analysis regarding preservation really goes hand in glove with the substantive analysis of whether this is a penalty provision, an unenforceable penalty provision under New York law, and here's why. Judge Elrod, you're absolutely correct. It should have been raised earlier through pleading, through a Rule 50 motion, because there was something that the parties could fix. The parties could fix it. The judge could fix it. Because why? Because you have to show, when, when analyzing a question of a penalty provision, you have to look to the proportionality, the relation between the trigger event, which here is the deferred tax asset breach, and the penalty, which here is the acceleration of the earn-out. What's the relation between the two, and could the parties have anticipated that? And second, you have to look at what amount of damages was reasonably calculable at the front end. And the same analysis goes into the substantive, is this a penalty, as the pleading, because that's what we would have proved at trial. If they had pled penalty, if they had raised it during a timely Rule 50 motion, what we would have established at trial, and mind you, this is an evidentiary issue, because although the ultimate question of whether a provision is an illegal penalty, an unenforceable penalty, is a question of law, it is substantially dependent on a factual development. So it's really, it's a question of law in that the judge decides it, not the jury. The jury wouldn't have been given a question, is this an unenforceable penalty, but there had to have been an evidentiary foundation developed at trial. Would the jury have been given any questions related to this? Could they have been given subsidiary questions about proportionality or otherwise, or is that not how it works? I don't believe that's how it works in the New York construct. The cases, it's hard to wrap your head around them. If you look at the main New York court of appeals cases, the JMD case, the 172 Van Duzer case that are cited in both of the parties' briefs, it's very, those cases came up to the court of appeals in the context of review of a summary judgment, and in both cases, the court reversed the summary judgment and recited whether it's an unenforceable penalty is a question of law, but we reversed the summary judgment because the parties should have had an opportunity to develop the evidence regarding proportionality, regarding the difficulty of damages. So it's, there doesn't appear to be a specific query given to a jury, but there needs to have been an evidentiary development in order for the judge to make the ultimate decision. In that way, I think it's a, it is more appropriately considered to be a mixed question of fact than law. It's recited as a question of law, but there isn't, and what the evidence would have been here, if they'd have told us, if they'd have pled it, and if they'd have raised it in a timely Rule 50 motion, what the evidence would have shown is the structure of the acceleration clause. Judge Southwick, you recognize it's not acceleration per se, the contract doesn't say if you breach this deferred tax asset provision, then we're going to accelerate the earn out. Instead, it gives a list of four acceleration events, one of which is a breach of any provision. It could have been any provision in the contract, so long as it's material. Then we're going to accelerate the earn out. It's not a random lump sum award. It's an acceleration of the earn out, which is a significant part of the consideration for the sale of the business as a whole. If everything had gone smoothly, then earn out would have been calculated based on gross profits of the company being sold and another related company paid on a monthly basis a percentage of their gross profits over 16 quarters, four years. What the acceleration provision does is recognize that these parties are joined at the hip. The buyer and the seller are married to each other for 16 quarters. And the folks who are selling CSI are dependent upon that relationship to get their earn out. And the parties, sophisticated business parties, arm's length transactions, made an agreement that if there is one of these acceleration events, a material breach of a term, any term, material breach of a term, breach of the related employment agreements, failure of warranties made in the agreement, any one of those, and we're going to accelerate the earn out, and we're not going to make you be dependent on S360, which has proved itself unreliable by materially breaching other provisions of this contract. We're not going to make you have to live with them and be dependent on them to not mess with you. So it's not a windfall at all? It is not a windfall at all. In terms of the agreement and benefit of the bargain. Exactly, Your Honor. And it is discounted. The $1.4 million is two-thirds of the maximum amount of earn out that they could have earned over the course of the 16 quarters if everything had gone smoothly and they had met all of the benchmarks. And what this represents is a bargain by the parties. If you, S360, if you do not live up to the provisions of this contract, then we don't have to depend upon you to get our earn out over time. And that's what we'd have proved if we had had a heads-up. This may be more or less what you told Judge Graves, but so this ends the obligation of the earn out, this payment, or is there some continuing obligation upon S360? There is a continuing obligation because the final provision in that long, the lengthy paragraph D, at the end of it there is a provision that, you see, they, it accelerates and you get $1.4 million with a credit for the earn out amount already paid as of the date of breach. But then it provides that you can continue to, the last sentence, the regular schedule of earn out payments shall continue until such time as the full earn out obligation has been satisfied. And so if the, if things had not blown up at that point because of the litigation and whatnot, the parties could have continued and tried to earn through the gross profits, the delta between the 1.4, less a credit, and the cap of the 2.1. So it truly is an acceleration of what would have been earn out over 4 years. And that is exactly the evidence that we would have presented at trial if we had had the heads up. So the, this court in the Lee v. U.S. case that cited, explained that a pragmatically sufficient time has meaning. And you cannot, the failure to plead, the failure to plead a defense is a fatal waiver if the defense will dictate trial strategy and involve more than legal issue. And those are exactly applicable here. The, this is not like a statutory cap on punitive damages or something like that where it's just math. You take the number, you apply just math. This does require evidence, not just to address the proportionality, but to establish that this is an acceleration clause and not a penalty clause. And for that reason, the preservation issue is fatal. The failure to plead it, the failure to raise it in a Rule 50 motion, either of those by itself is fatal. But the two together, this two, the same analysis establishes that this is not an unenforceable penalty. This is a plain vanilla acceleration provision. And if you look at the way the New York Appellate Courts have discussed the analysis of when is something, an illegal penalty clause, very differential to the agreement of the parties. And the recitals in 2.2D make it clear. This is a bargain-for issue. It has recitals saying, we know it's going to be difficult to try to figure out how any of the acceleration events might impact the gross profits of the two companies. Because, remember, Judge Southwick, that is the operative standard. That's what they're accelerating, is the calculation of the 20, the payment of earn-out based on the gross profits of those two companies. And the absent of fraud or exploitive overreaching or unconscionable conduct, those are the sorts of standards that the New York Courts look to to determine when there is an unenforceable penalty provision. They say that only if it's grossly disproportionate. Kennedy. One of the things that strikes me about what is a pragmatic time for this to have been raised, if, in fact, this is not a jury issue, very clumsy, but solely for the judge to be considering, it would seem to be more workable, though not the most efficient way to do it, that you could produce this evidence after determination by the jury on other matters, since it's solely a matter for the judge, that you'd have a hearing just on this after the jury verdict. I'm just looking at the pragmatic side, which is part of this. Isn't that at least something that takes it out of the usual reason for why 50A says you've got to raise this for the first time before the matter goes to the jury? Well, Your Honor, I guess I had not thought of that, but that's seriously a square peg in the round hole of a trial construct. By the time that the first time this was raised You mean this is so crazy you hadn't thought of it? Well, you know, Your Honor, I guess I wouldn't have put it exactly that way, but by the time the issue was raised, was weeks after the trial, the verdict was done, it was on entry of judgment. The witnesses are released. If there had been an invocation of the rule, that was long since passed. So there was no notice that we're going to have a second phase, based upon the, you know, they didn't say, well, Your Honor, after the verdict comes in, they didn't say, we need to set up a hearing next week because there are further matters and we want to contest this. There was no notice given to her. No notice. And no notice at all. You could do what was suggested. We could do what was suggested if that were something that, but still we'd all have to go back to, you'd have had to give notice at the front end that this unusual bifurcated procedure is going to happen at the back end. And I guess I'm trying to envision it. Now, and because the earn-out payments are based on determinations about other terms in the contract, I would imagine that the same, or at least some of the same witnesses that have already testified, in terms of how you value this, are the ones who would have testified in this, ones who did testify in this trial anyway. Wouldn't there likely be some overlap in witnesses? It would probably be, the Venn diagram would be almost a complete overlap. Exactly the same. But if you conceptualize it, I suppose what you're getting at might be something like, in a criminal context, the guilt-innocence phase, punishment phase. Well, you know going in at the front end that there's going to be part two. Same thing in Texas state practice. You have punitive damages, the amount of punitive damages as phase two, if there are threshold findings in phase one. But you know at the front end that that's going to happen. So I don't think that the bifurcation that you've suggested is reflected anywhere in the New York jurisprudence regarding liquidated damages provisions. But even if it were, there still needs to be a heads-up this is going to happen. Could you talk about this situation where we're supposed to just disregard part of the evidence that's not objected to because New York doesn't let it, says it's substantive and therefore we're, I don't know how we decide which questions we're supposed to disregard and how does the jury, what do you do with that after you disregard it? Do you go through the record and say, well these questions we can't consider so we have to see if there's sufficient evidence based without those? It's just very bizarre to me. It is very bizarre, Your Honor. And I think there are three straight up reasons why the whole parole evidence argument is inapplicable here and the court needn't waste any time on it. First, the magistrate judge found ambiguity. And you're right, Judge Elrod, even if parties don't plead ambiguity, courts can say, hmm, this is ambiguous. And what the magistrate judge found in the order denying summary judgment is that it is not clear what the parties meant by the use of the term deferred tax asset in this provision in the agreement. The question isn't what does deferred tax asset mean on a balance sheet under GAAP. It's what did the parties mean in using that term here in this agreement. The magistrate judge said that the meaning of that term, which is not defined in the agreement, goes to the heart of the party's dispute and there is an ambiguity regarding what they meant it to mean. Is it the net or is it the gross? Is it the gross deferred tax asset or is it the net deferred tax asset minus deferred tax liabilities? And ambiguity, summary judgment denied, you need to try this to the jury. So where you have a case of ambiguity, parole evidence rule is wholly inapplicable. Second, circumstances surrounding the execution of a contract are always admissible. Even where you have an unambiguous contract. And I think ironically, the two cases that S360 cited in their recent Rule 28J letter illustrate precisely what is a parole evidence situation where the evidence at issue is no evidence at all and our situation here. You look at the two cases. One of them, the Fogelson case, which is a New York State case, was the parties attempted through testimony to add a completely new oral contract, a term that didn't exist anywhere in the contract. It was a dispute regarding a lease. And one party testified that the landlord had made an oral promise to me that for the entire term of this lease of an apartment, I will provide free bus service to the schools. And that didn't appear anywhere in the lease, and the Court said that's an improper parole evidence, that's an oral contract, attempting to add a new provision to the contract, that's not appropriate. The case out of this Court, the Croft-Mullins case, was an instance where by testimony the parties attempted to contradict an express term in a contract. That was a case, a dispute between a contractor and the United States government regarding building a concrete bridge. And there were provisions in — and there was a dispute over whether the government was supposed to have supplied the concrete on certain dates. The concrete got held up, things got delayed, and the contractor sued and said, no, no, no, the government is supposed to — the government is liable because they didn't provide it on certain dates. But there was another provision that said the government shall not be liable for any delay of materials. And so you had oral testimony attempting to contradict an express term. Well, duh. Those two instances, parole evidence is no evidence at all. And that is a horse of a different color from what we have here. What we have here is an uncertainty. Is it your client's position that evidence of the party's intent requires deviation from the GAAP definition of deferred tax assets or that the definition supports the jury's finding of a breach? They do not have to deviate from GAAP. Deferred tax asset is a GAAP term, but so is deferred tax liability. And that's the precise issue. GAAP says you calculate deferred tax asset, you calculate deferred tax liability, and then you net them on the balance sheet. And what the party's contracted for here is pre-netting. They use that term pre-netting. And before my time runs out, I want to make two small points. One is the third reason that this — that parole evidence rule is not controlling here is that even if you take out, even if you parse through and you say, Mr. Cooper's sentence regarding this intent or regarding what Alan Hartley said, even if you slice those out, there's still plenty of other evidence in the record. There's Joe Burnett, who was the accountant who testified that what the parties did here was call for a gross, call for a deferred tax asset. You have Nancy Peck, who was the accountant hired by S360 to do the calculation, who said, yeah, that's what this agreement calls for. So that's — those are the three reasons why this Court should not be slowed down by the parole evidence rule. And in my last 30 seconds, I want to say the question of the charge, the instruction is not a meritorious challenge to this judgment in any way, and specifically the harmful error analysis, the deference to the Court's discretion in telling the jury, don't worry about it, I'm going to take care of this on the back end, sound discretion of the district court. And second, if you look at the — at the record as a whole and the context of the jury's question, what they were asking is, do we need to calculate the $1.4 million minus the thing? Do we need to do that? And Judge Jacobs said, don't worry about it, I'm going to take care of it. If you look at the record as a whole and the context of the jury's question, the standard for finding harmful error on something like — like that is, in the context of that whole record, is there an ineradicable doubt that the jury was confused and made a harmful error because of this instruction? And it's not. Thank you, counsel. We have your argument. Thank you. If I may, I want to jump right into the jury — the response to the jury note. The standard review, this Court said in a case called Brown, and we cited it in our briefs, that the standard review, when a complaining party objects to a district court's response to a jury note, is abusive discretion. We're not talking about run-of-the-mill, charging-the-jury type of error. We're talking about specific responses to jury notes. And abusive discretion is the standard, as this Court said, subject to, admittedly, harmless error analysis. Now, there's a lot of facts that tie into this issue, and I don't necessarily want to occupy time going through a lot of facts, but basically, the Court's aware the district court took the jury's answer to Question 1, the Section 2.7 breach, and applied it to the Adjustment Events Clause and boosted the judgment by $1.15 million. However, Section 2.2d, what has been called the Acceleration Clause, and it's really a penalty clause, but it was discussed — even though it was not submitted to the jury, it was discussed repeatedly throughout the trial. The district court told the jury panel at the outset, the panel, that the failure to calculate and pay under Section 2.7 was an adjustment event that would entitle new CSI to an accelerated payment. During new CSI's opening statement, their counsel basically said the same thing, that the breach of Section 2.7, the deferred tax asset provision, would trigger and it was an adjustment event that would make the amounts to be paid out over time due and payable immediately. So, again, Mr. Cooper testified that an adjustment event would result in new CSI being entitled to $1.4 million less earn-out payments. New CSI's counsel questioned its accounting expert about the application of Section 2.2d. New CSI's counsel questioned Staffing 360's corporate rep about the liquidated damages provision. And the relevant contract language was discussed repeatedly and actually even put up in front of the jury many times. Juror Notes 3 and even, in fact, Juror Note 4, as well, show that the jury expected it was going to be asked to apply this provision. And the questions that they asked revealed — It's not error to deny a juror's expectation, is it? No, it's not. But what this does, Judge Graves, it does help to show the harm. If, in fact, that there was an abuse of discretion, and we say that there was, because even this court has said, albeit parenthetically in signing a district court case, that the jury is entitled to know the effect of its answers. Well, it said it was an error to — I mean, it's saying — it's blessing that they did that. It's not saying that it's a must. Permissive is different than must. I beg to differ with you on that. What case says it's a must? It's the Martin v. Texaco case. It cites parenthetically the Porsche case cited in our — It says they did it in that case. The quote from this court's decision in Martin v. Texaco is the, quote, jury is entitled to know what effect its decisions will have. That's the — it's citing the parenthetical of the case. It's not saying we hold that a jury is entitled to know. I agree with that. It's just saying that that court case held that. It's citing it with approval, however. And that's, again, as I pointed out, that case is — no, it's not a circuit court case. It's a district court case. But it's dicta at best. Well, I, of course, will take the position that that's not correct, respectfully. But I do understand the argument. Well, what if they were really asking you, so do we need to make this calculation? They are asking that. Is that what they're asking? I think so. The judge says, no, you don't need to. But that's not the consequences of an answer. That's a question about whether or not there's something you need me to do. You need me to do this, Judge? No, I don't. Well, but it went beyond that. The instruction said, do not consider the effect of your answers. And what our argument is, as far as harm is concerned, you know, setting aside the abuse of discretion, we think we get there, but understanding the court's questions on that. Let's talk about harm for a second. In deciding whether there was a breach of contract, in answering the ever-important question, number one in this case, the jury was instructed on materiality. And the jury was told, in considering whether there is a breach, it has to be material. And one factor in considering that and deciding that is whether there's going to be a forfeiture. And there's really no contest, it seems to me, that the provision of this acceleration clause is a forfeiture. I mean, my client's being ordered to pay up front more than a million dollars. However, what the court did, I don't believe that Judge Yackel had any intent. If I may finish my answer, I'd be grateful. I don't believe Judge Yackel had any intent, per se, in doing this. But, in fact, what he was doing was, you know, that's the rule in Texas is you can't tell the jury the effect of its answers. It's not the rule. But as I understand your argument, it is that if they had been told that they needed to make a calculation, they would have been less likely to find a breach. How do we know? They ask the questions, do we need to calculate this? Do we need to calculate this? Judge Yackel said, don't consider the effect of your answers. You take that instruction and put it up with the instruction for question number one, which says you may consider whether there's a forfeiture in answering the question of whether there's a material breach. You can't reconcile those, Your Honor. It's our ultimate position, and that leads to a reversal and a remand for a new one. Thank you very much. We have your argument. This concludes the hearing.